UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK JACKSON,

             Plaintiff,

v.                                                     Case No.  8:06-cv-01596-T-24 EAJ

ROOMS TO GO, INC.,,

             Defendant.

_____/

## ORDER

This cause comes before the Court on Defendant's motion for summary judgment.  (Doc.
No. 24).  Plaintiff filed a response in opposition thereto.  (Doc. No. 27).

**I.    Background**

**A.    General Background of Defendant's Business, Policies, and Promotion
Procedures**

Defendant, Rooms to Go, Inc. ("RTG"), is a retailer specializing in home furnishings and
accessories (Doc. No. 24).  RTG has a network of distribution centers and warehouses that are
responsible for shipping and receiving the products RTG sells.  (Doc. No. 24).

RTG operates its warehouse promotions through a formal Warehouse Promotion Request
Procedure.  (Felumlee Aff. at ¶ 4).  In accordance with this procedure, vacant positions are
posted by placing a Promotion Opportunity Notice Form on the warehouse's Promotion
Opportunity Board and in the Human Resources office.  (Felumlee Aff., Ex. 1).  A warehouse
associate seeking the promotion must submit their application to Human Resources.  (Felumlee
Aff. at ¶ 5).  The application is initially reviewed by a Human Resources representative to

determine whether the applicant satisfies the minimum qualifications for the position.  (Felumlee

Aff. at ¶ 5).  If the applicant does not possess the exact objective qualifications for the position,

the Human Resources representative uses a "Qualification Criteria" chart to determine whether

the applicant's other experience may serve as a substitute for the objective criteria listed on the

Promotion Opportunity Notice.  (Felumlee Aff. at ¶ 6, Ex. 3).  For example, an applicant's three

years of work may substitute for one year of college.  (Felumlee Aff., Ex. 3). The formula used

in the "Qualification Criteria" chart is applied uniformly to all applicants.  (Felumlee Aff. at ¶ 7).

If Human Resources determines that an applicant meets the minimum qualifications for

the position, the applicant is then invited to interview for the position.  (Felumlee Aff. at ¶ 14).

Interviews are conducted by the individual who is in the next highest level of management to the

available position.  (Felumlee Aff., Ex. 2).  Upon selecting an applicant for the position, the

interviewer must document the reason(s) for his choice on a Promotion Selection Form.

(Felumlee Aff., Ex. 2).

**B.**      **Plaintiff's Employment History with RTG**

Plaintiff Patrick Jackson ("Jackson"), an African American male, began working for

RTG on September 21, 1998 as a Receiving Associate.  (Doc. No. 5).  Within the first year of his

employment, Jackson worked in several different departments within RTG's Great Oaks Satellite

Warehouse.  (Pl. Depo. at 24).  In July of 1999, Jackson transferred to RTG's new Lakeland

Distribution Center.  (Pl. Depo. at 38).  In February of 2000, Jackson was promoted to Bedding

Supervisor through RTG's Warehouse Promotion Request Procedure.  (Pl. Depo. at 41-42).

Jackson spent two years as a Bedding Supervisor at the Lakeland Distribution Center.  (Pl. Depo.

at 55).  In March 2002, Jackson transferred to a newly established RTG warehouse in Charlotte,

North Carolina, in the same Bedding Supervisor position, in hope of obtaining a Bedding

Manager position.  (Pl. Depo. at 57-58).  In April 2003, Jackson had still not received a

promotion, and so he transferred back to the Lakeland Distribution Center as a Shipping

Supervisor.  (Pl. Depo. at 60-62, 68).  Jackson transferred back to Lakeland because he learned

that a Bedding Manager position would not be available at the Charlotte facility due to its small

size, and also to be closer to his family.  (Pl. Depo. 61-62, 68).  Jackson has remained a Shipping

Supervisor at the Lakeland Distribution Center since 2004.  (Pl. Depo. at 84).

### C.      Jackson's Two Promotions at Issue

#### 1.      Bedding Manager, July 2004

In July 2004, Jackson responded to a Warehouse Promotion Opportunity Notice for a

Bedding Manager position by filling out a Promotion Request Form.  (Pl. Depo. at 91-92, Pl. Ex.

G).  The Promotion Opportunity Notice listed the minimum requirements for the position as (1)

"[a] Bachelor's Degree in Business or Industrial Mgmt, or the equivalent" and (2) "four years of

management experience over one or more large departments."  (Pl. Ex. G).  Additionally, the

Promotion Request Form specifically stated that an applicant "must meet the minimum

qualifications to apply."  (Pl. Ex. G).  Jackson's Promotion Request Form stated that he had

seven years and eight months of supervisory or management experience.  (Pl. Ex. G).

RTG's Corporate Human Resources Manager at the Lakeland Distribution Center, Lynne

Felumlee ("Felumlee"), received Jackson's Promotion Request Form for the vacant Bedding

Manager position.  (Felumlee Aff. at ¶ 2, 9).  Felumlee reviewed Jackson's request form to

determine whether he possessed the minimum qualifications for the Bedding Manager position.

Felumlee determined that Jackson lacked the minimum qualifications for the position and stated

her reasoning in her affidavit:

> Because Plaintiff lacked a college degree, I used the Qualification Criteria chart to determine whether his warehouse experience could serve as a substitute for the college education requirement.  Using the Qualification Criteria chart, which indicates that an employee may substitute one and a half years of warehouse work for every one year of college, I concluded that Plaintiff would need at least six years of warehouse work to substitute for a four-year college degree.  Because Plaintiff had seven years of warehouse experience, I found that he had satisfied the first requirement listed for the Bedding Manager position.  However, I determined that Plaintiff was unable to satisfy the second requirement listed on the Promotion Opportunity Notice, since he lacked four years of management experience over a large department, at RTG or with any former employer.

(Felumlee Aff. at ¶ 10-12).  On August 1, 2004, Jackson was notified that he would not be interviewed for the Bedding Manager position because he did not meet the minimum qualifications.  (Pl. Depo. at 94-95; Pl. Ex. H).  Felumlee also reviewed the request forms from all other applicants and determined that four applicants met the minimum qualifications for the Bedding Manager position.  These four applicants were permitted to interview for the position.  (Felumlee Aff. at ¶ 14).

Richard Armatrout ("Armatrout"), Interim Cluster Manager at RTG's Lakeland Distribution Center, interviewed the four applicants and selected Richard Hathcock ("Hathcock"), a Caucasian male, for the promotion to the Bedding Manager position.  (Armatrout Aff. at ¶ 5-6; Pl. Depo. at 100).  Armatrout had no role in determining which applicants met the minimum qualifications for the position.  (Armatrout Aff. at ¶ 4).  Armatrout chose Hathcock for the position because he "felt he was the most qualified candidate for the position in light of his interview performance, job knowledge, and experience."  (Armatrout Aff. at ¶ 6).

Jackson personally complained to Jerrie Greschuk and Lynne Felumlee about not being given an interview for the Bedding Manager position.  (Pl. Depo. at 117-18).  However, Jackson

4

did not file an official internal complaint because he decided to wait for another promotion opportunity.  (Pl. Depo. at 118).

        2.      **Shipping Manager, August 2004**

In August 2004, a Promotion Opportunity Notice was posted for a vacant Shipping Manager Position.  (Pl. Depo. at 118; Pl. Ex. J).  Jackson submitted a Promotion Request Form for the vacant Shipping Manager Position, in accordance with RTG's Warehouse Promotion Request Procedure.  (Greschuk Aff. at ¶ 4; Pl. Ex. J).  In order to be permitted to interview for the Shipping Manager position, an applicant must have satisfied the minimum qualifications of: (1) a high school diploma or equivalent; (2) two years of college with classes in Business or Industrial Management or the equivalent; and (3) four years of warehouse experience, of which two years involved supervision.  (Pl. Ex. J).

Jerrie Greschuk ("Greschuk"), an RTG Human Resources Representative, reviewed Jackson's application and determined that he was minimally qualified for the position. (Greschuk Aff. at ¶ 2, 5).  Jackson satisfied the first and third requirements outright.  (Pl. Ex. I; Greschuk Aff. at ¶ 7; Pl. Ex. J).  As for the second requirement, Greschuk used the Qualification Criteria chart and determined that Jackson's prior work experience served as a substitute for the two years of college education.  (Greschuk Aff. at ¶ 6).  Jackson received a Promotion Memorandum from Greschuk on August 22, 2004 stating that he had met the minimum qualifications for the Shipping Manager position and would soon be contacted for an interview. (Pl. Depo. at 122; Pl. Ex. J).

In the middle of his shift on August 26, 2004, Jackson was informed that he was supposed to be at his interview for the Shipping Manager position.  (Pl. Depo. at 123; Def. Ex.

H).  Jackson was told he was already forty-five minutes late to the interview, but that he should

still go.  (Pl. Depo. at 124).  When the interviewer, Scott Stetson ("Stetson"), asked Jackson why

he was late to the interview, Jackson told him that he had not been told about the interview until

forty-five minutes after it should have started.  (Pl. Depo. at 124).  Jackson stated that Stetson

told him "I'm going to go ahead and interview you. . .but more than likely you're not going to

get the job, you know, you're 45 minutes late."  (Pl. Depo. at 124).  During the interview,

Stetson asked Jackson basic questions about shipping.  (Pl. Depo. at 131).  Stetson also asked

Jackson if he was going to manage like Shank Babb manages and come to work in "Sean John"

or "Rocker Wear" clothing.  (Pl. Depo. at 130).  Shank Babb is African American and "Sean

John" and "Rocker Wear" are clothing lines produced by African American rappers.  (Pl. Depo.

at 71, 130-131).

Jackson did not receive the promotion.  Stetson chose Eddie Facey ("Facey"), a

Caucasian male, for the Shipping Manager position.  (Pl. Depo. at 132).  Stetson interviewed

eight candidates (two Caucasian candidates, four African-American candidates, and two

Hispanic candidates) and kept notes of each interview on a separate Promotion Interviewing

Form.  (Stetson Aff. at ¶ 5-6; Ex. 1).  Stetson stated that he chose Facey for the position because

"he gave a strong interview and demonstrated substantial knowledge of the shipping and load-

out functions."  (Stetson Aff. at ¶ 11).

### D.    Procedural Background

On October 28, 2004, Jackson submitted a Charge of Discrimination to the Equal

Employment Opportunity Commission ("EEOC").  (Pl. Ex. M).  Jackson claimed he had

suffered personal harm due to the denial of promotions to Bedding Manager and Shipping

6

Manager.  (Pl. Ex. M).  Jackson claimed he had been discriminated against because of his race in

violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  (Pl. Ex. M).

The EEOC determined that there was reasonable cause to believe that a violation of Title VII had

occurred and sent a letter to both Jackson and RTG inviting the parties to come together to reach

a resolution.  (Pl. Ex. M).  RTG's attorney responded to the EEOC with a request to submit

additional information in the form of a Request for Reconsideration.  (Pl. Ex. N).  The EEOC

denied RTG's Request for Reconsideration, and on June 1, 2006, the EEOC issued Jackson a

notice of right to sue.  (Pl. Ex. N & O).

On February 2, 2007, Jackson filed his amended complaint, alleging four separate causes

of action: Count I alleges that Jackson was discriminated against on the basis of his race in

violation of Title VII; Count II alleges a claim for retaliatory discrimination; Count III alleges a

claim for intentional infliction of emotional distress; and Count IV alleges that Jackson was

discriminated against on the basis of his race in violation Section § 1981 of the Civil Rights Act

("§ 1981").  (Doc. No. 5).  On January 31, 2008, RTG filed the instant motion for summary

judgment.  (Doc. No. 24).  On March 3, 2008, Jackson filed his response in opposition.  (Doc.

No. 27).

## II.     <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must draw all

inferences from the evidence in the light most favorable to the non-movant and resolve all

reasonable doubts in that party's favor.  <u>See</u> <u>Porter v. Ray</u>, 461 F.3d 1315, 1320 (11th Cir.

2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the

non-moving party must then go beyond the pleadings, and by its own affidavits, or by

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

there is a genuine issue for trial.  See id. (citation omitted).

**III**.     **Analysis**

RTG argues that it is entitled to summary judgment on all of Jackson's claims.  The

Court will address each of RTG's arguments in turn.

**A.     Counts I and IV – Title VII and § 1981**

Count I and Count IV of the amended complaint allege that Jackson was discriminated

against on the basis of his race, in violation of Title VII and § 1981.  Title VII prohibits an

employer from "discriminat[ing] against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin."  42 U.S.C. § 2000e-2(a)(1).  § 1981 provides: "[a]ll persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make

and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).

Claims of discrimination under § 1981 are analyzed in the same manner as those brought under

Title VII.  See Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1060 (11th Cir. 1994); Standard v.

A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, this Court will analyze Jackson's

Title VII and § 1981 claims together.

8

Both Count I and Count IV are based on RTG's failure to promote Jackson on two separate occasions (Bedding Manager and Shipping Manager).  (Doc. No. 5).   RTG argues that it is entitled to summary judgment because: (1) Jackson cannot establish a prima facie case of discriminatory failure to promote; (2) RTG had legitimate nondiscriminatory reasons for its decision not to promote Jackson; and (3) Jackson cannot establish that RTG's stated reasons for not promoting him were pretextual.[1]  (Doc. No. 24).

### 1.     Jackson's Prima Facie Case

A plaintiff may establish a prima facie case of discrimination by producing direct, circumstantial, or statistical evidence of discrimination by an employer.  See Standard, 161 F.3d at 1330.  In the instant case, Jackson has not produced direct or statistical evidence of discriminatory intent, so Jackson must rely on circumstantial evidence to prove his case.  The United States Supreme Court established a burden-shifting framework to prove discriminatory intent through circumstantial evidence in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Under this framework, if a plaintiff establishes a prima facie case of discrimination, the employer must rebut that presumption by articulating a legitimate, nondiscriminatory reason for not promoting him.  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998).  If the employer does so, the plaintiff is left with the burden of demonstrating that the employer's offered reasons are pretextual.  Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000).

---

[1]RTG also argues that Jackson's pattern and practice allegations should be dismissed. (Doc. No. 24 at 13).  The Court agrees with RTG on this issue because the pattern and practice method of proof is not available to Jackson.  The Eleventh Circuit has held that the pattern and practice method of proof is not available to plaintiffs pursuing private, non-class action suits. See EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000); see also Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 355-56 (5th Cir. 2001).

9

A plaintiff may establish a prima facie case of discriminatory failure to promote by showing that: (1) he is a member of a protected class; (2) he applied for and was qualified for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

Regarding the Bedding Manager position, RTG argues that Jackson cannot establish the second prong of the test because Jackson lacked the minimum qualifications for the position. (Doc. No. 24 at 9).  The Promotion Opportunity Notice for the Bedding Manager Position explicitly listed that an applicant must have "four years of *management* experience over a large department" to be interviewed and considered for the position.  (Pl. Ex. G, emphasis added). The Promotion Request Form for the Bedding Manager position, which Jackson filled out and signed, also stated that an applicant must meet the minimum qualifications to be considered for the job.  (Pl. Ex. G).  Felumlee, RTG's Corporate Human Resources Manager, reviewed Jackson's application, determined that he did not meet the minimum qualification of "four years management experience over a large department," and did not invite Jackson to interview for the position.  (Felumlee Aff. at § 12).

Jackson contends that the four applicants who were selected for interviews had similar qualifications to Jackson, but the record evidence indicates that this is not so.  (Pl. Ex. G; Pl. Ex. P; Pl. Ex. Q).  Jackson had only *supervisory* experience, while the four applicants who were interviewed possessed the requisite *managerial* experience over a large department.  (Pl. Ex. G; Felumlee Aff. at § 12).

Hathcock was the successful candidate for the Bedding Manager Position.  Jackson

argues that Hathcock's managerial experience outside of RTG may not be legitimate, despite the fact that Hathcock's resume explicitly lists the managerial experience.  (Doc. No. 27 at 12; Pl. Ex. I).  However, it is RTG's policy to contact an applicant's past employers by phone to verify such experience.  (Felumlee Depo. at 35-36).  Jackson contends that because the record does not contain evidence of any phone calls to verify Hathcock's resume, RTG must have chosen the interviewees in a discriminatory manner.  (Doc. No. 27 at 14).  The Court finds that this argument lacks merit, as an absence of evidence is not enough for Jackson to survive a motion for summary judgment.  Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts.").

The Court agrees with RTG that Jackson cannot establish a prima facie case for discriminatory failure to promote with respect to the Bedding Manager position because he does not meet the second prong, that he was qualified for the promotion.  <u>Wilson</u>, 376 F.3d at 1089.  As to the Shipping Manager position, however, Jackson can establish a prima facie case for discriminatory failure to promote.  Jackson belongs to a racial minority (African American), he applied for and was qualified for the Shipping Manager position, he was rejected despite his qualifications, and a Caucasian male who was equally or less qualified received the promotion.  (Pl. Depo. at 119-123, 134; Doc. No. 5 at 1, 5).  Because Jackson has established a prima facie case for discriminatory failure to promote, the burden now shifts to RTG to articulate a legitimate nondiscriminatory reason for not promoting him.  <u>Carter</u>, 132 F.3d at 642-43.

**2.**     **<u>RTG's Reasons for Promotion Decisions and Pretext</u>**

11

Jackson applied for the position of Shipping Manager and was selected for an interview. (Pl. Ex. J).  Jackson, along with seven other applicants, was interviewed for the Shipping Manager position by Scott Stetson, the South Shipping Cluster Manager.  (Stetson Aff. at § 3, 5).  After interviewing all the candidates, Stetson stated that he selected Facey because "he gave a strong interview and demonstrated substantial knowledge of the shipping and load-out functions."  (Stetson Aff. at 11).  Stetson's Promotion Interviewing Form from Jackson's interview indicates that Jackson was vague in his answers and did not give as strong of an interview as Facey.  (Stetson Aff., Ex. 1).  Accordingly, the Court finds that RTG's has articulated a legitimate nondiscriminatory reason for its decision to select Facey instead of Jackson for the Shipping Manager position.  As such, the burden now shifts back to Jackson to demonstrate that RTG's offered reason was pretextual.  <u>Chapman</u>, 229 F.3d at 1024-25.

A reason is not "a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) (quotation and emphasis omitted).  In attempting to show pretext, a plaintiff may not "recast an employer's proferred nondiscriminatory reasons or substitute his business judgment for that of the employer."  <u>Chapman</u>, 229 F.3d at 1030.  If the proferred reason "might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  <u>Id</u>.

The only evidence presented by Jackson to demonstrate pretext is his own opinion. Jackson simply asserts that he felt like he was a more qualified candidate for the position than Facey, and he argues that it was "implausible that Facey could logically have done so much better than all of the minority candidates."  (Pl. Depo. at 136; Doc. No. 27 at 18).  This

argument, however, is not supported by any record evidence and is simply Jackson's own opinion, which the Court finds is insufficient to raise a genuine issue of material fact as to whether RTG's proffered reason for not promoting Jackson might have been pretextual.

For the foregoing reasons, the Court finds that RTG's motion for summary judgment on Counts I and IV of Jackson's amended complaint is **GRANTED**.

### B.    Count II - Retaliation

Jackson admits that he cannot establish a prima facie case of retaliatory discrimination. (Doc. No. 27 at 20.)  Accordingly, RTG's motion for summary judgment on Count II of Jackson's amended complaint is **GRANTED**.

### C.    Count III - Intentional Infliction of Emotional Distress

Jackson admits that he cannot establish a prima facie case of intentional infliction of emotional distress.  (Doc. No. 27 at 21.)  Accordingly, RTG's motion for summary judgment on Count III of Jackson's amended complaint is **GRANTED**.

## IV.    Conclusion

The Court finds that Jackson has not established a prima facie case of discrimination for RTG's failure to promote him to the Bedding Manager position.  While Jackson did establish a prima facie case of discrimination for RTG's failure to promote him to the Shipping Manager position, he was not able to demonstrate that RTG's stated reasons for its decision not to promote Jackson were pretextual.  The Court also finds that Jackson cannot establish a prima facie case for his claims of retaliatory discrimination and intentional infliction of emotional distress.  Therefore, the Court finds that RTG is entitled to summary judgment on all Counts of Jackson's amended complaint.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Defendant's motion for summary judgment (Doc. No. 24) is **GRANTED**;

(2)     The Clerk is directed to enter judgment in favor of Defendant, close this case, and

terminate any pending motions.  The pretrial conference that is scheduled for July

22, 2008 is cancelled.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of July, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

14